ROBERT C. BUSCHEL, ESQ.,
BUSCHEL GIBBONS, P.A.
100 SE 3rd Avenue, Suite 1300,
Fort Lauderdale, FL 33394
Tel.: (954) 530-5301 | Fax: (954) 320-6932
E-mail: buschel@bglaw-pa.com

BRADFORD M. COHEN, ESQ.,
BRADFORD COHEN LAW
1132 SE 3rd Avenue, Fort Lauderdale, FL 33316
Tel.: (954) 523-7774 | Fax: (954) 523-2656
E-mail: bmc@floridajusticefirm.com
*Motion for Pro Hac Vice Admission pending*

JONATHAN NOAH SCHWARTZ, ESQ.,
JONATHAN SCHWARTZ LAW PLLC
24 NW 29th Street, Ofc., Miami, FL 33127
Tel.: (786) 535-1530 | Fax: (786) 338-7435
E-mail: jschwartz@jonschwartzlaw.com
*Motion for Pro Hac Vice Admission pending*

Attorneys for Plaintiff,
 BILL K. KAPRI a/k/a "KODAK BLACK"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BILL K. KAPRI a/k/a "Kodak Black," | )<br>) |
| Plaintiff, | )<br>) |
| v. | )   Civil Action No.: 1:20-cv-2684<br>) |
| FEDERAL BUREAU OF PRISONS;<br>MICHAEL CARVAJAL, individually and in his official capacity as Director, Federal Bureau of Prisons; HECTOR JOYNER, individually and in his official capacity as Warden, United States Prison Big Sandy; and JOHN DOES 1-15, individually and in their official capacities as Guards, United States Prison Big Sandy, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

# COMPLAINT

## Introduction and Summary

1. "No tyranny can have a severer effect than that which is exercised under the appearance of laws, and with the plausible colours of justice[.]" Baron de Montesquieu, *Considerations on the Causes of the Grandeur and Declension of the Roman Empire*, Ch. XIV (1721).

2. Bill K. Kapri a/k/a "Kodak Black," currently incarcerated at United States Prison Big Sandy ("USP Big Sandy"), is suffering torture and religious suppression in violation of, respectively, his Eighth and First Amendment rights, as well as the Religious Land Use and Institutionalized Persons Act of 2000 (the "RLUIPA"). He is also wrongly incarcerated based upon the BoP erroneously categorizing him as a "Criminal Category 4."

3. Sadly, constitutional violations like these are commonplace at that Prison and others, and the Federal Bureau of Prison's tyrannical framework, in which it plays judge, jury and executioner, persists, its subjects our most disenfranchised neighbors to whom minimal attention is paid; but not the Plaintiff, an internationally acclaimed hip-hop artist, who brings these issues to bear by this suit to recover for injuries suffered when his rights under the First and Eighth Amendments, as well as the RLUIPA, were violated intra-incarceration within USP Big Sandy, as well as for an injunction to order JOHN DOES 1-15, the Warden, Carvajal and the BoP to treat the Plaintiff as if he is a "Criminal Category 2" as the Honorable Federico Moreno sentenced him as.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(e)(1) and (b)(2). The BoP, which employs all of the Defendants, including the Director, perform their official duties in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district. Specifically, the ultimate decision and approval for the Plaintiff's rights under the First Amendment, the Eighth Amendment and the RLUIPA to be violated, as well as to incorrectly categorize the Plaintiff's Criminal Category, was made in Washington, D.C.; and John Does 1-15 and the Warden, all employees of the Washington, DC-based BoP, carried out such direction from Washington, DC in Inez, Kentucky.

**Parties**

6. The Plaintiff is an adult resident of Broward County, Florida, who is currently incarcerated under Register Number 18149-104 at United States Penitentiary Big Sandy ("USP Big Sandy") in Inez, Kentucky.

7. The BoP is a federal law enforcement agency subdivision of the United States Department of Justice and is responsible for the administration of federal prisons, including USP Big Sandy, and maintains its principal office in Washington, DC.

8. The Director is the top official of the BoP, described immediately *supra*, and maintains his principal office in Washington, DC.

9. The Warden is employed by the BoP, described *supra* with its principal office in Washington, DC, is the top official at USP Big Sandy, a BoP prison located in Inez, Kentucky.

10. John Does 1-15, employed by the BoP, described *supra*, with its principal office in Washington, DC, are prison guards at USP Big Sandy, a BoP prison located in Inez, Kentucky.

**Facts**

**A.   The Plaintiff's Career as an Internationally Renowned Musician.**

11. The Plaintiff is one of the world's most successful hip-hop artists who, "on his second try, [] reached the highest spot on the Billboard 200." Hugh McIntyre, *Controversial Rapper Kodak Black Charts His First No. 1 Album With 'Dying To Live'*, FORBES, *available at* https://www.forbes.com/sites/hughmcintyre/2018/12/23/controversial-rapper-kodak-black-charts-his-first-no-1-album-with-dying-to-live/#257c47754649.

**B.   The Plaintiff's Indictment, Arrest, Plea of Guilty and Sentence of Imprisonment.**

12. On May 9, 2019, a federal grand jury sitting in the Southern District of Florida returned a two (2) count indictment charging the Plaintiff with violating 18 U.S.C. § 922(a)(6). *See* Indictment, *United States of America v. Bill K. Kapri a/k/a Dieuson Octave a/k/a "Kodak Black"*, 1:19-cr-20273-FAM, Doc. #1, (S.D. Fla. May 9, 2019).

13. On May 11, 2019, the Plaintiff was arrested while on his way to perform at Hard Rock Stadium in Miami Gardens, Florida as one of the headlining acts at "Rolling Loud," "a 3-day music event that started in Miami, FL and is now the largest Hip-Hop festival in the world." *Frequently Asked Questions*, ROLLING LOUD, *available at* rollingloud.com/faq. This arrest, upon information and belief, was made for purposes of posture, as it is counterintuitive, considering

safety concerns, to arrest someone accused of false paperwork to obtain a firearm at a pre-arranged public gathering when law enforcement knew he was arriving in the jurisdiction in perhaps the most private of travel conditions – on a private jet at a small airport.

14. The Plaintiff pled guilty before the Honorable District Judge Federico Moreno in the Southern District of Florida to two (2) counts of violating 18 U.S.C. § 922(a)(6), and on November 13, 2019 was sentenced to 46 months of imprisonment and three (3) years of supervised release.

**D.  The Plaintiff's Erroneous Incarceration at USP Big Sandy, a Maximum Security Prison Over 1,000 Miles Away From His Home, Despite His Plea of Guilty to a Paperwork Crime.**

15. 18 U.S.C. § 922(a)(6) is a truly non-violent crime of deception rather than one of possession; but notwithstanding such the Plaintiff finds himself incarcerated for such at USP Big Sandy, which is a maximum security prison. Shockingly, upon information and belief, the non-violent Plaintiff, who is in his early twenties, was forced to share a cell with a man carrying a term of many years of imprisonment in addition to two life sentences; a man who, upon entry into the cell, told the Plaintiff: "give me 10 reasons I shouldn't kill you."

16. BoP's placement of the Plaintiff at USP Big Sandy is contrary to its policy, which dictates that an inmate shall generally be placed at a facility within 500 miles of their home.

17. Furthermore, Judge Moreno sentenced him considering a "Criminal Category 2" and recently entered an Order that a "Criminal Category 3" is overrepresented, and the Miami-Dade State Attorney's Office *nole prossed* the case causing the "detainer" to be placed on the Plaintiff to be removed, yet Mr. Kapri remains incarcerated at USP Big Sandy.

18. Upon information and belief, and based upon reports made by incarcerated and formerly incarcerated individuals, the torture outlined herein is commonplace at USP Big Sandy; considering such reports, it is interesting that an internal BoP Security/Designation Data report reads "DESIG RMKS: CASE CAREFULLY RVWD DUE TO NATIONAL MEDIA ATTN RCVD AS RAPPER "KODAK BLACK[.]"

19. That same document reveals that BoP had the Plaintiff categorized as a "Criminal Category 4" with the Pre-Sentence Investigation Report as its source, which actually categorized Mr. Kapri as a "Criminal Category 3," and where Judge Moreno further departed downward from such at sentencing based on a "Criminal Category 2"

4

E. **The Plaintiff is Being Tortured at USP Big Sandy; Including a Gang Beating of the Plaintiff by USP Big Sandy Prison Guards in Retaliation for an Incident Which Occurred in Miami, Florida on October 29, 2019, Routine Placement on a Four Point Restraint in a Backless Paper Gown for Hours on End with No Legitimate Law Enforcement Purpose and No Access to a Bathroom While the Prison Guards Joke About the Torture, and Execution Style Placement in Just His Underwear While Soaking Wet.**

  i. *The Gang Beating of the Plaintiff by Prison Guards.*

20. On October 29, 2019, while Plaintiff Kapri was incarcerated by the BoP in Miami, he found himself involved in an altercation with another inmate. A prison guard attempted to break up the fight and was injured attempting to gain control over the situation.

21. This altercation is contributing to Mr. Kapri's incarceration at USP Big Sandy, even though that same prison guard wrote a letter expressly stating that he did not believe "that Mr. Kapri was in the right state of mind to understand the situation[]" and "do[es] not believe, based on [his] interactions with Mr. Kapri, that his behavior warrants a maximum security prison."

22. Notwithstanding such, John Does 1-5 engaged in an improper gang beatdown of the Plaintiff subsequent to his arrival at USP Big Sandy, and, upon information and belief, therein flicked his testicles leading to the logical conclusion that this gang beatdown was in direct retaliation for injuries sustained by a prison guard on October 29, 2019.

23. Mr. Kapri was injured in this gang beatdown and suffered physical damages.

  ii. *The Routine Placement of the Plaintiff for Hours on End in a Backless Paper Gown on a Four Point Restraint, for No Legitimate Law Enforcement Purpose and With No Access to a Bathroom, While Prison Guards Joke About the Torture.*

24. Upon information and belief, and based on first-hand reports from the Plaintiff and other inmates and former inmates at USP Big Sandy, the Plaintiff, for no legitimate law enforcement purpose, has been placed by some of the John Does 1-15 in a backless paper gown on a four (4) point restraint for over six (6) hours on end, with no access to a bathroom and therefore forced to urinate and defecate on himself with his bare back against the restraint, while some of the John Does 1-15 make jokes about the torture.

25. Prison medical records show that this treatment caused the plaintiff lacerations and to bleed from his mouth, and then shortly after the lacerations were documented prison

5

medical staff documented dried vomit coming from the Plaintiff's mouth while still on the four (4) point restraint. The torture, however, continued, and even after the lacerations and vomiting the prison medical staff documented that the restraints had to be adjusted to "keep the integrity of [the Plaintiff's] skin."

    *iii.*    *The Execution Style Placement of the Plaintiff, in Just His Underwear While Soaking Wet.*

26. Upon information and belief, and upon the reports of individuals incarcerated and formerly incarcerated at USP Big Sandy, some of the John Does 1-15 have placed the Plaintiff, for no legitimate law enforcement purpose, execution style on his knees in just his underwear while soaking wet.

    *iv.*    *The Damages Resulting From the Torture.*

27. Upon information and belief, and based upon the documented prison medical reports concerning the Plaintiff subsequent to the torture set forth *supra* including the lacerations and vomiting described therein, the Plaintiff suffered significant physical injuries as a result of said torture, as well as embarrassment, humiliation and emotional distress.

**F.**    **The Plaintiff, a Practicing and Faithful Hebrew Israelite, is Being Denied Access to a Rabbi.**

28. The Plaintiff is a practicing and faithful member of the Hebrew Israelites.

29. The Plaintiff, himself and through his counsel, has requested access to a Rabbi in order to faithfully practice Judaism from the Warden, the Director and the BoP.

30. Such requests have fallen on deaf ears, as the Plaintiff remains without access to a Rabbi.

31. This lack of access, upon information and belief, is disproportionate, as access to clergy of other religions, those most favored by USP Big Sandy staff and in the surrounding area, is available.

**G.**    **The Plaintiff, On His Own and Through His Counsel, is Essentially Experiencing His Raised Constitutional Concerns Being Ignored by the Warden, the Director and the BoP.**

32. The Plaintiff, on his own and through his counsel, began documenting the allegations raised herein in the early Spring of 2020.

33. Since then, the Plaintiff has exhausted his administrative remedies, including but definitely not limited to at least six (6) e-mails from his counsel to the Warden plus numerous requests to the Director through BoP.

34. While sometimes these communications go entirely ignored, other times they are simply acknowledgments of receipt.

35. Assessing such lack of response and acknowledgment of receipt, it is clear that the Warden, the Director and the BoP are effectively ignoring the Plaintiff's constitutional concerns, leaving him with no option but to bring the instant action; and the Plaintiff has thus been required to retain the undersigned counsel to file and litigate this suit, and is required to pay such counsel a reasonable fee.

## **Legal Framework**

36. "The First Amendment protects . . . religion . . . . . . . . In religious debate or expression the government is not a prime participant, for the Framers deemed religious establishment antithetical to the freedom of all. The Free Exercise clause embraces a freedom of conscience and worship that has close parallels in the speech provisions of the First Amendment, but the Establishment Clause is a specific prohibition on forms of state intervention in religious affairs[.]" *Lee v. Weisman*, 505 U.S. 577, 592 (1992) (citing *Meese v. Keene*, 418 U.S. 465, 480-81 (1987); *Buckley v. Valeo*, 492 U.S. 1, 92-93, 96 (1976)). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125 (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

37. "[P]unishments of torture, . . . and all others in the same line of unnecessary cruelty, are forbidden by th[e] [Eighth] [A]mendment to the Constitution." *Wilkerson v. Utah*, 99 U.S. 130, 136 (1878) (citing Cooley, Const. Lim. (4th ed.) 408; Wharton, Cr. L. (7th ed.), § 3405); *see also Baze v. Rees*, 553 U.S. 35, 48 (2008) (relying on *Wilkerson* as having found that torture expressly violates the Eighth Amendment).

38. "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" *Holt v. Hobbs*, 574 U.S. 352, 360 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). "'A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain relief against a government.'" 42 U.S.C. § 2000cc-2(a).

39. The Plaintiff has satisfied all conditions precedent to filing this action, including exhausting all existing administrative remedies.

## FIRST CLAIM FOR RELIEF
### Torture in Violation of Eighth Amendment Rights
### Against John Does 1-15, the Warden and the Director, All Individually

40. Paragraphs one (1) through thirty-nine (39) *supra* are hereby realleged and incorporated by reference to this Claim for Relief.

41. This is a civil action brought against John Does 1-15, individually, the Warden, individually, and the Director, individually, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

42. The Plaintiff has constitutionally protected rights under the Eighth Amendment to the United States Constitution.

43. John Does 1-15, the Warden and the Director, federal officers acting under color of federal authority, violated the Plaintiff's Eighth Amendment rights when:

   a. John Does 1-5 engaged in a gang beatdown of the Plaintiff for no legitimate law enforcement purpose;

   b. John Does 1-15 placed the Plaintiff in a four (4) point restraint for over six (6) hours, for no legitimate law enforcement purpose, with his back against the restraint and wearing only a back-less paper gown, forced to defecate all over himself while JOHN DOES 1-15 made jokes about the torture and while the Plaintiff was bleeding from his mouth, had dried vomit coming from his mouth and experienced the restraint compromising the integrity of his skin;

   c. John Does 1-15, for no legitimate law enforcement purpose, placed the Plaintiff on his knees in his underwear and sprayed him with a powerful hose;

   d. the Warden oversaw the administrative system which "open and shut" grievances made by the Plaintiff and his counsel about the aforementioned torture, failed to remedy the situation, and otherwise ignored the Plaintiff's communications regarding Eighth Amendment deprivations; and

  e. the Director oversaw the administrative system which "open and shut" grievances made by the Plaintiff and his counsel about the aforementioned torture, failed to remedy the situation, and otherwise ignored the Plaintiff's communications regarding Eighth Amendment deprivations.

44. The Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide meaningful remedy.

45. An appropriate remedy, namely damages, can be imposed.

46. John Does 1-15, the Warden and the Director are liable to the Plaintiff for their violations of the Plaintiff's rights pursuant to *Bivens*, 403 U.S. at 388.

## REQUESTED RELIEF

WHEREFORE the Plaintiff respectfully requests that this Honorable Court:

A. rule that the Eighth Amendment protects the rights of incarcerated individuals from being tortured, specifically from being placed in back-less paper gowns on four (4) point restraints, without a legitimate law enforcement purpose, for hours on end while prison guards make jokes, as well as from being the victims of gang beat downs by prison guards and being placed on the floor execution style in their underwear and soaking wet for no legitimate law enforcement purpose;

B. enter judgment awarding the Plaintiff compensatory damages against John Does 1-15, the Warden and the Director in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding the Plaintiff punitive or exemplary damages against John Does 1-15, the Warden and the Director in an amount appropriate to the evidence adduced at trial;

D. enter judgment awarding the Plaintiff his costs and reasonable attorneys' fees in this action; and

E. grant the Plaintiff such other and further relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF
### Religious Suppression in Violation of First Amendment Rights
### Against the Warden and the Director, Both Individually

47. Paragraphs one (1) through forty-six (46) are hereby realleged and incorporated by reference to this Claim for Relief.

48. This is a civil action brought pursuant to *Bivens*, 403 U.S. at 388, against the Warden, individually, and the Director, individually.

49. The Plaintiff has constitutionally protected rights under the First Amendment to the United States Constitution.

50. The Warden and the Director, federal officers acting under color of federal authority, violated the Plaintiff's First Amendment rights when:

    a. the Warden, despite numerous requests from the Plaintiff and his counsel, denied the Plaintiff, a faithful and practicing Hebrew Israelite, access to a Rabbi so that the Plaintiff could meaningfully practice his religion; and

    b. the Director, despite numerous requests from the Plaintiff's counsel, denied the Plaintiff, a faithful and practicing Hebrew Israelite, access to a Rabbi so that the Plaintiff could meaningfully practice his religion.

51. The Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide meaningful remedy.

52. An appropriate remedy, namely damages, can be imposed.

53. The Warden and the Director are liable to the Plaintiff for their violations of the Plaintiff's First Amendment rights pursuant to *Bivens*, 403 U.S. at 388.

## REQUESTED RELIEF

WHEREFORE the Plaintiff respectfully requests that this Honorable Court:

A. rule that the First Amendment protects the rights of incarcerated individuals from being denied access to clergy in order to engage in the faithful practice of their chosen religion, and to rule that the First Amendment protects certain religions from being favored over others in its application;

B. enter judgment awarding the Plaintiff compensatory damages against the Warden and the Director in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding the Plaintiff punitive or exemplary damages the Warden and the Director in an amount appropriate to the evidence adduced at trial;

D. enter judgment awarding the Plaintiff his costs and reasonable attorneys' fees in this action; and

E. grant the Plaintiff such other and further relief as the Court may deem just and proper.

## THIRD CLAIM FOR RELIEF
### Violation of the Religious Land Use and Institutionalized Persons Act of 2000
### Against the Warden, the Director and the BoP, in Their Official Capacities

54. Paragraphs one (1) through fifty-three (53) are hereby realleged and incorporated by reference to this Claim for Relief.

55. The Provisions of the RLUIPA apply to the Plaintiff's claims against the Warden, in his official capacity, the Director, in his official capacity, and the BoP, in its official capacity.

56. The Warden, the Director and the BoP's failure, despite numerous written requests from the Plaintiff, himself, and his counsel, to provide the Plaintiff access to a Rabbi unlawfully and substantially burdens the Plaintiff's sincere and central religious beliefs and practices in violation of the Plaintiff's rights under the RLUIPA, especially considering that, upon information and belief, access to clergy of faiths more prevalent in Inez, Kentucky is granted and commonplace.

57. The Warden, the Director and the BoP's practices are justified by no compelling, legitimate, or rational government interest.

58. The Warden, the Director and the BoP's practices and policies are not the least restrictive means – being neither narrowly tailored nor vaguely related – to the furtherance of any governmental interest.

59. The Warden, the Director and the BoP's policies and practices unlawfully and substantially burden rights outside of their purported ambit.

60. The policies, practices and customs of the Warden, the Director and the BoP are both overinclusive and underinclusive.

61. The Warden, the Director and the BoP's alleged objectives are not pursued with respect to analogous non-religious conduct or the conduct of other religions.

### REQUESTED RELIEF

WHEREFORE the Plaintiff respectfully requests that this Honorable Court:

A. rule that the RLUIPA protects the rights of incarcerated individuals from being denied access to clergy in order to engage in the faithful practice of their chosen religion, and to rule that the RLUIPA protects certain religions from being favored over others in its application;

B. enter judgment awarding the Plaintiff compensatory damages against the Warden, the Director and the BoP in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding the Plaintiff punitive or exemplary damages the Warden, the Director and the BoP in an amount appropriate to the evidence adduced at trial;

D. enter judgment awarding the Plaintiff his costs and reasonable attorneys' fees in this action; and

E. grant the Plaintiff such other and further relief as the Court may deem just and proper.

## FOURTH CLAIM FOR RELIEF
### Preliminary and Permanent Injunction Relief

62. Paragraphs one (1) through sixty-one (61) are hereby realleged and incorporated by reference to this Claim for Relief.

63. The Plaintiff brings this Fourth Claim for Relief against JOHN DOES 1-15, in their official capacities, the Warden, in his official capacity, Carvajal, in his official capacity, and the BoP, in its official capacity.

64. The Plaintiff has been clearly categorized, for purposes of incarceration, as a "Criminal Category 4" even though Judge Moreno, the Plaintiff's sentencing judge, has made clear that a "Criminal Category 3" is even overrepresented.

65. The Plaintiff has an Eighth Amendment right to not be punished in a cruel and unusual manner, and subjecting him to maximum security conditions based upon an incorrect criminal history categorization amounts to cruel and unusual punishment.

66. Upon information and belief, this erroneous criminal categorization is causing the Plaintiff to be incarcerated at USP Big Sandy when, instead, he should be incarcerated in lesser security conditions.

## REQUESTED RELIEF

WHEREFORE the Plaintiff respectfully requests that this Honorable Court:

A. enter an injunction directing JOHN DOES 1-15, in their official capacities, the Warden, in his official capacity, Carvajal, in his official capacity, and the BoP, in its official capacity, to treat the Plaintiff as if he is a "Criminal Category 2" as the Honorable Federico Moreno sentenced him as, and to move the Plaintiff to a lower security prison;

B. enjoin John Does 1-15, in their official capacities, the Warden, in his official capacity, Carvajal, in his official capacity, and the BoP, in its official capacity, from continuing

to classify the Plaintiff as a "Criminal Category 4" and from continuing to incarcerate him at USP Big Sandy or at any other similarly secured prison;

      C.      enter judgment awarding the Plaintiff his attorneys' fees and costs; and

      D.      grant the Plaintiff such other and further relief as the Court may deem just and proper.

## Jury Demand

The Plaintiff hereby demands a trial by jury of all claims so triable.

Respectfully submitted,

/s/ Robert Buschel, Esq.
D. D.C. Bar No. FL0039
BUSCHEL GIBBONS, P.A.
100 SE 3rd Avenue, Suite 1300,
Fort Lauderdale, FL 33394
Tel.: (954) 530-5301 | Fax: (954) 320-6932
E-mail: buschel@bglaw-pa.com

/s/ Bradford M. Cohen
Bradford M. Cohen, Esq.
Florida Bar No. 118176*
BRADFORD COHEN LAW
1132 SE 3rd Avenue
Fort Lauderdale, FL 33316
Tel.: (954) 523-7774 | Fax: (954) 523-2656
E-mails: bmc@floridajusticefirm.com
          service@floridajusticefirm.com

/s/ Jonathan Noah Schwartz
Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596*
JONATHAN SCHWARTZ LAW PLLC
24 NW 29 Street, Ofc.
Tel.: (786) 535-1530 | Fax: (786) 338-7435
Miami, FL 33127
E-mail: jschwartz@jonschwartzlaw.com

*Motions for Pro Hac Vice Admission Pending
Attorneys for the Plaintiff,
 Bill K. Kapri a/k/a "Kodak Black"